# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JUDY GROLL, :

           Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

           Defendant. :

Case No. 3:09-cv-196

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged

in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on March 29, 2005, alleging disability from December 17, 2004, due to Epstein-Barre, carpal tunnel, and depression. (Tr. 50-52; 59). Plaintiff's application was denied initially and on reconsideration. (Tr. 30-32; 34-35). Subsequently, Administrative Law Judge Daniel Shell held a hearing, (Tr. 386-403), following which he determined that Plaintiff is not disabled. (Tr. 13-24). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she has severe intermittent flare-ups of pain and fatigue secondary to the Epstein-Barr virus and occasional flare-ups of neck pain and headaches due to exacerbations of cervical arthritis, but that she did not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 18, ¶ 3; Tr. 20, ¶ 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited

range of light work (Tr. 21, ¶ 4) and is capable of performing her past relevant work as the manager of a fast food restaurant as Plaintiff performed it and as it is generally performed. (Tr. 23, ¶ 5). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 23).

Examining psychologist Dr. Flexman reported on May 24, 2005, that Plaintiff complained of experiencing the symptoms of Epstein-Barr for the past six years and that she had a tenth grade education. (Tr. 122-25). Dr. Flexman also reported that Plaintiff's mood was "tired", she was oriented, had a good attention span, her concentration was fair, her intellectual functioning was judged to be average, her memory was good, and that her judgment was fair. *Id.* Dr. Flexman identified Plaintiff's diagnosis as somatoform disorder NOS and he assigned her a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's abilities to remember and carry out short, simple instructions, to make judgments for simple work-related decisions, to sustain concentration, to interact with others, and to respond appropriately to work pressures in a normal work environment were slightly impaired. *Id.*

Examining physician Dr. Oza reported on September 22, 2005, that about seven years ago, Plaintiff had been diagnosed to have chronic fatigue syndrome or Epstein-Barr syndrome, that she had periods of extreme fatigue and increased somnolence on and off for seven years along with arm and leg pain, that she had a history of depression but that medication had helped "a lot", and that she had arthritis of the cervical spine. (Tr. 142-48). Dr. Oza also reported that Plaintiff's physical examination was normal and that the cause of Plaintiff's arm and leg pain was not clear. *Id.*

The record contains treating physician Dr. Turner's voluminous office notes dated

4

April 9, 1997, to March 16, 2007. (Tr. 151-254). Those notes reveal that Dr. Turner treated Plaintiff for various medical conditions including upper respiratory infections, possible viral syndrome, post-menopausal syndrome, acute gastroenteritis, nasal pharyngitis, sinusitis, weakness, fatigue, tiredness, malaise, Epstein Barr virus, and bronchitis. *Id.*

On April 27, 2005, Dr. Turner reported that he could confirm the conditions of Epstein Barr, depression, and carpal tunnel syndrome, that Plainitff was on daily medication in attempts to control her depression, and that recent blood work performed in January, 2005, confirmed a current re-occurrence of her Epstein Barr which leaves her extremely tired and listless. *Id.* Dr. Turner opined that the combination of her impairments made it difficult for Plaintiff to attain and maintain full time employments. *Id.*

Dr. Turner reported on January 19, 2006, that he had been seeing Plaintiff since March, 1990; in early 1998, she was diagnosed with Epstein Barr Syndrome which caused extreme fatigue and weakness to the point where she said her arms and legs hurt and she could hardly use them; and that she continued to have significant flare-ups of the Epstein Barr. *Id.* Dr. Turner also reported that Plaintiff complained of neck pain with significant headaches in July, 2005, and was diagnosed with cervical spine arthritis, and that the continuing problems with the Epstein Barr and arthritis caused her some stress. *Id.* Dr. Tuner noted that Plaintiff's activity is limited during the periods of extreme flare-ups and that she would be unable to function at those times. *Id.*

On March 16, 2007, Dr. Turner reported that he had a long association with Plaintiff, could confirm all of her complaints including short term memory loss, loss of ability to concentrate, muscle pain, multiple joint pain not associated with acute trauma, headaches, sleep disturbances, recurrent diarrhea, and malaise without any type of exertion. *Id.* Dr. Turner also reported that

5

Plaintiff met all of the criteria of Chronic Fatigue Syndrome due to the progressive nature of her symptoms and frequent episodes, and that she was totally disabled and unable to perform any type of gainful employment for which she was trained. *Id.*

The record contains Plaintiff's mental health treatment notes from Catholic Social Services of the Miami Valley dated November 21, 2005, through July 24, 2006. (Tr. 255-79). Those notes reveal that Plaintiff received treatment from a mental health counselor who noted when she first met with Plaintiff that her diagnosis was adjustment disorder with mixed emotional features and that her GAF was 51. *Id.* Those notes also reveal that over time Plaintiff met the goals of treatment. *Id.*

The record contains treating physician Dr. Suciu's office notes dated August 25, 2006, through April 20, 2007. (Tr. 290- 319). Those notes reveal that Dr. Suciu treated Plaintiff for various medical conditions including pseudomembranous colitis, restless leg syndrome, chronic fatigue syndrome, neuralgias, depression, and fibromyalgia.. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff had three conditions that were listed in the medical record including fibromyalgia, chronic fatigue syndrome, and restless leg syndrome. (Tr. 400-02). The MA also testified that fibromyalgia was normally diagnosed by a rheumatologist based on the existence of specific trigger points, but that he (the MA) could find no such correlation in the record and was basing his opinion on Plaintiff's "convincing" allegations. *Id.* The MA testified further that chronic fatigue syndrome was not susceptible to clinical testing but that he felt Plaintiff gave a "pretty good history" for it. *Id.* Additionally, the MA testified that Plaintiff would miss a lot of work, that when she was feeling well she probably could perform sedentary to light work, but that she was going to miss so much work, she was basically

6

unemployable. *Id.* The MA admitted that he could not identify an onset date although he thought that Plaintiff's alleged onset date of December 17, 2004, was reasonable and he could not point to any citations in the record to support his testimony. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by finding she is capable of performing a limited range of light work and by improperly evaluating her credibility. (Doc. 8).

In support of her first Error, Plaintiff essentially argues that the Commissioner erred by rejecting the opinion of her treating physician Dr. Turner as well as the MA's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security

7

Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Shell rejected Dr. Turner's and the MA's opinions that Plaintiff is not disabled essentially on the basis that the objective evidence did not support their opinions. (Tr. 20).

First, Social Security Ruling 99-2p, 1999 WL 271569 (Apr. 30, 1999) ("SSR 99-2p") makes it clear that the same five-step sequential evaluation process applies to chronic fatigue syndrome claims and that the unique nature of chronic fatigue does not require the use of any lesser standard. The Ruling states that a individual's symptoms are necessary but not, standing alone, sufficient evidence to show that chronic fatigue syndrome is a medically determinable impairment and it points out that additional medical signs or laboratory findings must be present in the record before chronic fatigue can be the basis of a finding that an individual is disabled. Specifically, the Ruling provides, "disability may not be established on the basis of an individual's statement of symptoms alone" and "documentation of medical signs or laboratory findings in cases involving [chronic fatigue syndrome] is critical to establishing the presence of a medically determinable impairment." SSR 99-2p, 1999 WL 271569 at *1, *6.

Second, a review of Dr. Turner's office notes reveals that he documented few, if any, objective findings and that his notes are essentially a recitation of Plaintiff's subjective complaints. In addition, as Judge Shell noted, nowhere in his office notes did Dr. Turner document that Plaintiff's diagnosis was chronic fatigue syndrome. Indeed, the first that Dr. Turner mentioned the diagnosis of chronic fatigue syndrome was in his March 16, 2007, report which he provided to Plaintiff's counsel. (Tr. 151). Up until that time, Dr. Turner consistently referred to Plaintiff's Epstein-Barr and not to chronic fatigue syndrome. Finally, none of the blood test results of record satisfy the standard identified in the Ruling which requires an elevated antibody toter to Epstein Barr virus capsid antigen equal to or greater than 1:5120 or early antigen greater than 1:640. SSR 99-2p, 1999 WL 271569 at *3. *See,* Tr. 243 (2005 test results), 246 (1999 test results), 251 (2003 test results), 253 (1998 test results).

The MA's testimony and opinion is simply not supported by the evidence and the MA himself recognized that flaw in his opinion. Specifically, the MA acknowledged that there was no rheumatology consultation which definitely defined fibromyalgia, that his conclusions as to chronic fatigue syndrome were based entirely on Plaintiff's subjective complaints. (Tr. 400-01). In addition, the MA was not able to identify any exhibits which supported his conclusions nor was he able to identify an onset date although he thought that Plaintiff's alleged onset date was "reasonable".

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Turner's and the MA's opinions that Plaintiff is disabled.

Plaintiff argues next that the Commissioner erred by improperly evaluating her credibility.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

For the same reasons that the Commissioner did not err in rejecting Dr. Turner's opinion and the MA's opinion, the Commissioner had an adequate basis for determining that Plaintiff was not entirely credible. That is, the objective medical evidence does not support

11

Plaintiff's allegations of total disability. In addition, the record reveals that Plaintiff engages in a wide variety of daily activities which are inconsistent with her allegation of total disability. Specifically, Plaintiff's activities include driving, preparing food, doing the dishes, doing the laundry, dusting, cleaning, sweeping, general straightening up around the house, gardening, taking out the trash, cutting the grass, attending concerts, eating out, doing crafts, drawing, caring for her husband who is disabled, walking, and visiting others. (Tr. 123, 89, 91, 92).

Under these facts, the Commissioner did not err by failing to find Plaintiff entirely credible.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 30, 2010.

                                          *s/ Michael R. Merz*
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).